UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MADELINE CARDENAS and ROLANDO MORA-HUERTA, <br><br> Plaintiffs, <br><br> vs. <br><br> UNITED STATES OF AMERICA, ERIC H. HOLDER, United States Attorney General, JANET NAPOLITANO, in her official capacity as Secretary of the Department of Homeland Security, JOHN KERRY, United States Secretary of State; IAN BROWNLEE, Consul General of the United States, City of Ciudad Juarez, JOHN DOES 1 – 7, Consular Officers, American Consulate General Visa Section at Ciudad Juarez,1 <br><br> Defendants. | Civil Action No. 12-00346-S-EJL <br><br> MEMORANDUM DECISION AND ORDER |

Plaintiffs Madeline Cardenas and Rolando Mora-Huerta ("Plaintiffs") filed

the instant action against various governmental defendants ("Defendants") seeking

review of the government's determination that Rolando Mora-Huerta is

inadmissible into the United States under two provisions of the Immigration and

Nationality Act ("INA"), 8 U.S.C. § 1101 *et. seq.*   Pending before this Court are

---

1  Pursuant to Federal Rule of Civil Procedure 25(d), the Court substitutes Secretary of State John Kerry for former Secretary Hillary Rodham Clinton.

Defendants' Motion to Dismiss under Federal Rules of Civil Procedure 12(b)(1) lack of subject matter jurisdiction, and 12(b)(6) failure to state a claim, (Dkt. 11), and Plaintiffs' First Motion to Amend (Dkt. 26).

Having fully reviewed the record, the Court finds that the facts and legal arguments are adequately presented in the briefs and record.   Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, this matter shall be decided on the record before this Court without oral argument.   For the reasons set forth below, the Court hereby **GRANTS** Plaintiffs' Motion to Amend. In the interest of judicial economy, the Court will accordingly consider Plaintiff's First Amended Complaint when ruling on Defendants' Motion to Dismiss.   However, the Court also **GRANTS** Defendants' Motion to Dismiss.

## BACKGROUND[2]

Plaintiffs are husband and wife.   Plaintiff Madeline Cardenas ("Ms. Cardenas") is a United States citizen who resides in Idaho.   Plaintiff Rolando Mora-Huerta ("Mr. Mora") is a Mexican citizen who resides in Mexico.   Mr. Mora lived in the United States illegally from 2004-2009.   During this period, Mr. Mora's criminal history consisted of a misdemeanor offense (for failure to purchase a valid driver's license and minor in possession/consumption/purchase of alcohol), as well

---

2   Unless otherwise noted, all facts are taken from Plaintiffs' First Amended Complaint (Dkt. 26-1.)

as a traffic infraction for speeding.   However, Mr. Mora was never sentenced to prison nor arrested for a felony while living in the United States.

In June 2008, Mr. Mora was routed into removal proceedings following a routine traffic stop.   On May 4, 2009, Mr. Mora appeared before an Immigration Judge to resolve his immigration case.   Pursuant to 8 U.S.C. § 1229c, Mr. Mora applied for and was granted the benefit of voluntary departure in lieu of removal. Mr. Mora complied with the terms of the Immigration Judge's voluntary departure order and returned to Mexico on August 29, 2009.

Ms. Cardenas thereafter filed an immediate-relative petition (Form I-130) on behalf of Mr. Mora.   Obtaining such a petition is generally the initial step in the immigration process for family members, as citizens, lawful permanent residents and employers may file petitions seeking Immigration and Naturalization Service ("INS") authorization for the immigration of aliens falling within various categories, such as family members. [3]   *See* 8 C.F.R. §§ 204.1 *et. seq*.   The petition was approved on September 29, 2009.   When the INS approves a petition, the alien beneficiary may then apply to a consular officer for an immigrant visa. 22 C.F.R. §§

---

[3] "Family-sponsored immigration is one of the primary avenues by which an alien can obtain lawful permanent residence in the United States, along with employment-based immigration, diversity-based immigration, and asylum."   *Cuellar de Osario v. Mayorkas,* 656 F.3d 954, 956 (9th Cir. 2011) (*rev'd en banc on other* grounds, 695 F.3d 1003 (9th Cir. 2012)).   The citizen who files an immediate relative petition is the petitioner and the sponsored immigrant is the primary beneficiary.   *Id*.

42.61 *et. seq.*   Without a visa, the beneficiary may not enter the United States.   8

U.S.C. § 1181(a).

On March 5, 2010, Mr. Mora attended his immigrant visa interview at the

U.S. Consulate in Ciudad Juarez, Mexico.   During his interview, Mr. Mora was

asked repeatedly if he was in a gang, and repeatedly stated that he was not a gang

member.   The consular officer asked Mr. Mora to return approximately three days

later.   Upon his return, consular officers took pictures of Mr. Mora's tattoos, which

include the letter "M" for Mora, the letter "R" for Rolando, Mr. Mora's parents'

names and dates of birth, Mr. Mora's complete name, Ms. Cardenas' name with a

rose, and a tattoo of two theatrical masks, a symbol often referred to as "Smile Now,

Cry Later."

On July 2, 2010, the consular officer denied Mr. Mora's immigrant visa

application, finding he was inadmissible under 8 U.S.C. § 1182(a)(3)(A)(ii)

(rendering inadmissible "[a]ny alien who a consular officer or the Attorney General

knows, or has reasonable ground to believe, seeks to enter the United States to

engage solely, principally, or incidentally in … any other unlawful activity); 8

U.S.C. § 1182(a)(9)(A)(i) (rendering inadmissible any alien previously ordered

removed under certain provisions of law)[4]; and 8 U.S.C. § 1182(a)(9)(B)(i)(II)

---

[4]  The Consular Information Unit later notified Mr. Mora that the U.S. Department of State
had revoked its 8 U.S.C. § 1182(a)(9)(A)(i) finding because Mr. Mora voluntarily departed
and thus had never been ordered removed.

(rendering inadmissible for ten years any alien unlawfully present in the United

States for one year or more).   On July 13, 2010, Mr. Mora sought further

information underlying the visa denial.   On July 20, 2010, an official with the

Consular Information Unit of the U.S. Consulate General for Ciudad Juarez, Mexico

stated in an email to Mr. Mora's prior counsel that:

> At the time of [Mr. Mora's] June 16, 2008 arrest, Mr. Mora was identified as a
> gang associate by law enforcement.   The circumstances of Mr. Mora's arrest,
> as well as information gleaned during the consular interview, gave the
> consular officer sufficient 'reason to believe' that Mr. Mora has ties to an
> organized street gang.   Consequently, Mr. Mora is ineligible for a visa and
> has no recourse to a waiver.

In addition, pursuant to a request made under the Freedom of Information Act, Mr.

Mora later obtained a copy of a Form I-213 "Record of Inadmissible Alien," dated

June 20, 2008, which stated, "MORA was identified as a Sureno gang associate …

by Nampa Police Department" and that "MORA was a passenger in a vehicle owned

and driven by a [REDACTED] who had identifiers consistent to [sic] being a

member of the Sureno gang."

On September 21, 2010, Mr. Mora submitted evidence to the U.S. Consulate

General in Ciudad Juarez to establish that he is not and has never been a member of

an organized criminal group or gang.   The evidence included a letter from Nampa

Police Department Corporal Brandy Sutherland of the Special Investigation Unit

assigned to gangs dated September 13, 2010 (hereinafter "NPD Letter."). The NPD

Letter states:

> After conducting a thorough search of Nampa Police Department records, I have been unable to locate any criminal gang documentation or contacts that would indicate Mr. Mora Huerta was a gang member prior to or at the time of his arrest.
>
> In addition, I also examined NPD records for the timeframe (06/19/08) in which you indicated that Mr. Mora Huerta was arrested.  I did note that during that timeframe the Nampa Police Department was conducting a multi-agency operation called "Street Sweeper" which is meant to focus law enforcement efforts on the suppression of gang activity.  Agents from Immigration and Customs Enforcement (ICE) are often assigned to assist Nampa officers during this operation.  It is quite possible that Mr. Mora Huerta was contacted by assisting agencies during that timeframe in the City of Nampa, but that he was not actually arrested by Nampa officers, therefore there would have been no report placed into the Nampa Police Department records system.
>
> You also requested I review photos of tattoos you sent via email which you said were on Mr. Mora Huerta's person.  Based on my training and experience as a Gang Investigator, the tattoos that are shown do not specifically indicate gang involvement.  It is common to see the theatrical masks, often referred to as "Smile Now, Cry Later" on that of a person affiliated with criminal gang membership, however, this symbol is not exclusive to gangs.  As for the tattoos of people's names, these do not appear to be consistent with any gang identifier. [5]

---

[5] When ruling on a motion to dismiss for failure to state a claim, the court must normally convert a Rule 12(b)(6) motion into one for summary judgment under Rule 56 if the court considers evidence outside of the pleadings.  *U.S. v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003).  However, a court may consider certain materials, such as documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice, without converting the motion to dismiss into one for summary judgment.  *Id*. at 908.  Because the Complaint references and quotes the NPD Letter extensively, the Court will consider the NPD Letter (Dkt. 24-1) without converting the Government's motion to one for summary judgment.  Further, when ruling on a Rule 12(b)(1) motion, a court may

(Dkt. 24-1.)

Mr. Mora's September 21, 2010 evidentiary submission to the U.S. Consulate General also included negative results of a criminal records search performed in the state of Guanajuato, Mexico, as well as other evidence to support Mr. Mora's good moral character.   In an e-mail to Mr. Mora's counsel dated February 8, 2012, the Consular Information Unit of the U.S. Consulate General stated that, notwithstanding "careful review" of the additional evidence supplied by Mr. Mora's legal representative, the inadmissibility determination of July 2, 2010 would not be overturned.

Mr. Mora thereafter requested an advisory opinion from the visa office of the Department of State in Washington, D.C.   While a consular officer's decision regarding findings of fact is conclusive, advisory opinions from the Department of State as to issues of law are binding upon the consular officer.   22 C.F.R. § 42.81(d).   Mr. Mora accordingly requested an advisory opinion on the legal question of whether the "reasonable ground[s] to believe" standard of 8 U.S.C. § 1182(a)(3)(A)(ii) was correctly applied to the facts of his case.   On June 1, 2012 the Department of State sent an e-mail ("Advisory Opinion") to Mr. Mora's counsel which indicated that the consular officer's decision would not be overturned.

---

consider "whatever evidence has been submitted, such as depositions and exhibits." *Carroll v. U.S.*, 661 F.3d 87, 94 (1st Cir. 2011) (quotation omitted).

Plaintiffs allege that the Advisory Opinion incorrectly identified Mr. Mora's name and contained numerous other factual inaccuracies.[6]   Plaintiffs accordingly requested a re-review of the matter and identified the factual errors in the Advisory Opinion.   Plaintiffs never received a response from the Department of State to their request for re-review.

Plaintiffs filed the instant action on July 6, 2012.   The parties thereafter entered a Stipulation for Extension of Time to Answer in order to enable Mr. Mora to attend a second immigration interview and present additional evidence to the Consular Office for consideration.   Prior to the second immigration interview, Mr. Mora obtained an opinion from Gang Prevention Specialist Peter Vasquez stating that, based on interviews with Mr. Mora and Ms. Cardenas, as well as pictures of Mr. Mora's tattoos, Mr. Vasquez did not believe Mr. Mora was a gang member or gang associate.   (Dkt. 13-1, p. 17.)   Mr. Mora also obtained acceptance into a tattoo removal program to demonstrate his lack of attachment to any tattoo that could be interpreted as having significance among criminal gangs.

Mr. Mora appeared at the American Consulate General Visa Section at Ciudad Juarez for a second immigrant visa interview on November 7, 2012. Although he was interviewed by "at least two individuals" on this date, the Consular Office refused to accept the documents Mr. Mora had brought with him, including

---

6  The parties have not filed a copy of the Advisory Opinion with the Court.

the opinion of Mr. Vasquez and the document regarding Mr. Mora's acceptance in the tattoo removal program.   Approximately one month later, the Consular Office issued a decision again denying Mr. Mora an immigrant visa under 8 U.S.C. § 1182(a)(9)(A)(i) and 8 U.S.C. § 1182(a)(3)(A)(ii).

Plaintiffs allege the Consular Office had no evidence to support a finding of inadmissibility pursuant to 8 U.S.C. § 1182(a)(3)(A)(ii) and that the decision to deny Mr. Mora's visa was "based on unconstitutional racial stereotypes and unconstitutional racial discrimination," and was "made in bad faith."   As such, Plaintiffs allege the Government's denial of Mr. Mora's visa application violated Ms. Cardenas' constitutional right to her marriage and to make choices regarding her family life, as well as Plaintiffs' constitutionally protected right to procedural due process.   Plaintiffs allege the government's actions have caused them irreparable harm, and request the Court to order the U.S. Consulate to approve Mr. Mora's immigrant visa application.

Defendants move to dismiss for lack of subject matter jurisdiction and failure to state a claim, asserting judicial review is precluded under the doctrine of consular nonreviewability, and failure to name the proper defendants.   Plaintiffs counter that, because the government did not act "on the basis of a facially legitimate and bona fide reason," in denying Mr. Mora's visa, the doctrine of consular nonreviewability does not apply.

## STANDARD OF REVIEW

Dismissal of a civil matter under Rule 12(b)(1) is appropriate if a party can establish that the court lacks subject matter jurisdiction over the claim.   As federal courts are presumptively without jurisdiction over civil actions, the burden of establishing jurisdiction rests upon the party claiming it.   *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

A motion to dismiss for failure to state a claim challenges the legal sufficiency of the claims stated in the complaint.   *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).   Dismissal may be based on the lack of cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.   *Balistreri v. Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th Cir. 1988).   To survive a motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."   *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).   In deciding whether to grant a motion to dismiss, the court must accept as true all well-pleaded factual allegations in the pleading under attack.   *Id.*   A court is not, however, "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."   *Sprewell v. Golden State Warriors*, 266 F.3d

979, 988 (9th Cir. 2001).   Thus, for a complaint "to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."   *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009) (*quoting Twombly*, 550 U.S. at 557).

## ANALYSIS

*1.   Motion to Amend*

Plaintiffs first filed the instant action on July 6, 2012.   As mentioned, the parties stipulated to an extension of time for Defendants' answer in order to allow Mr. Mora to present additional information to the consular officer and to attend second visa immigration interview.   After the consul again denied Mr. Mora's visa application upon conclusion of the second interview, the Government filed a Motion to Dismiss Plaintiffs' claims.   Plaintiffs thereafter filed a Motion to Amend and attached a proposed first amended complaint.   (Dkt. 26-1.)   Plaintiff's First Amended Complaint adds additional defendants and allegations regarding Mr. Mora's second visa immigration interview and second visa denial.   Defendants argue the Motion to Amend should be denied on the grounds of futility because this Court lacks subject matter jurisdiction, because the proposed First Amended Complaint still fails to state a claim for relief, and because Plaintiffs have failed to name the proper defendants.

Rule 15(a) of the Federal Rules of Civil Procedure governs amendments of the pleadings before trial.   Under Rule 15(a)(2), proposed amendments to the pleadings more than twenty-one days after the last responsive pleading is filed require the opposing party's written consent or leave of the court.   Fed.R.Civ.P. 15(a)(2).   Leave to amend should be freely granted when justice so requires.   *Id*.; *see also Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990) (the policy of Rule 15 is "to be applied with extreme liberality.").   A court generally considers five factors when assessing the propriety of leave to amend: bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the plaintiff has previously amended the complaint.   *U.S. v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011).   Here the only of the aforementioned factors at issue is futility of amendment, as the litigation is in its early stages, there is no suggestion that Plaintiffs have acted in bad faith or unduly delayed in bringing their motion, and the complaint has not previously been amended.

Although futility alone is a permissible basis for denying a motion to amend, *Saul v. U.S.*, 928 F.2d 829, 843 (9th Cir. 1991), the Court is guided by Rule 1 of the Federal Rules of Civil procedure, which directs that the federal rules should be construed and administered "to secure the just, speedy, and inexpensive determination of every action and proceeding."   Given the procedural posture of this case, and the fact that the parties have briefed the sufficiency of the amended

complaint as well as that of the original complaint, the Court determines justice

would be served and the action expedited by granting Plaintiffs' Motion to Amend

the complaint and proceeding to determine the sufficiency of the complaint as

amended for purposes of considering the pending Motion to Dismiss.   The

Plaintiffs' Motion to Amend will accordingly be granted and the Court will consider

the Defendants' Motion to Dismiss as a motion to dismiss the First Amended

Complaint.

### 2.   *Rule 12(b)(6):   Doctrine of Consular Nonreviewability*

The Court first considers whether the doctrine of consular nonreviewability

prevents judicial review of Plaintiffs' claims.   The Supreme Court "without

exception has sustained Congress' plenary power to make rules for the admission of

aliens and to exclude those who possess those characteristics which Congress has

forbidden."   *Kleindienst v. Mandel,* 408 U.S. 753, 766 (1972) (hereinafter

*"Mandel"*) (internal quotation and citation omitted); *see also Ventura-Escamilla v.

I.N.S.*, 647 F.2d 28, 30 (9th Cir. 1981) ("The scope of judicial review is necessarily

limited by the recognition that the power to exclude or expel aliens, as a matter

affecting international relations and national security, is vested in the Executive and

Legislative branches of government.").   It has thus been "consistently held that the

consular official's decision to issue or withhold a visa is not subject either to

administrative or judicial review."   *Li Hing of Hong Kong, Inc. v. Levin*, 800 F.2d

970, 971 (9th Cir. 1986).

There is, however, a limited exception to the doctrine of consular

nonreviewability.   When the denial of a visa implicates the constitutional rights of a

U.S. Citizen, the court may exercise "a highly constrained review solely to

determine whether the consular official acted on the basis of a facially legitimate and

bona fide reason."   *Bustamante v. Mukasey*, 531 F.3d 1059, 1060 (9th Cir. 2008).

This right to review arises from *Mandel*, in which United States citizen college

professors claimed a First Amendment right to receive information and ideas from

an alien.   The *Mandel* Court held that when the government denies admission "on

the basis of a facially legitimate and bona fide reason, the courts will neither look

behind the exercise of that discretion, nor test it by balancing its justification against

the First Amendment interests of those who seek personal communication with the

applicant."   408 U.S. at 770.    If the consular official offers a facially legitimate

and bona fide reason for the visa denial, "courts have no authority or jurisdiction to

go behind the facial reason to determine whether it is accurate[.]"   *Chiang v.

Skeirik*, 582 F.3d 238, 243 (1st Cir. 2009).

The first step in considering whether Plaintiffs' claims are subject to judicial

review is thus to determine whether Plaintiffs' constitutional rights have been

implicated.   *Mostofi v. Napolitano*, 841 F.Supp.2d 208, 211 (D.C. Cir. 2012) (A

court "lacks jurisdiction to review a consular officer's denial of a visa application when the denial fails to adversely implicate any interest protected by the Constitution."); *see also Saavedra Bruno v. Albright*, 197 F.3d 1153, 1163-64 (D.C. Cir. 1999) (finding the court lacked subject matter jurisdiction where plaintiffs asserted no constitutional claims).   It is clear that Mr. Mora, as an unadmitted and nonresident alien, has no right, constitutional or otherwise, to enter the United States.   *Mandel*, 408 U.S. at 762 (*citing U.S. ex rel. Turner v. Williams*, 194 U.S. 279, 292 (1904); *U.S. ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 542 (1950); *Galvan v. Press*, 347 U.S. 522, 530-532 (1954); *Harisiades v. Shaughnessy*, 342 U.S. 580, 592 (1952)).   Nor does Mr. Mora have standing to seek either administrative or judicial review of the consular officer's decision to deny him a visa.   *Adams v. Baker*, 909 F.2d 643, 647 (1st Cir. 1990) (*citing Centeno v. Shultz*, 817 F.2d 1212 (5th Cir.1987), *cert. denied*, 484 U.S. 1005 (1988); *Ventura-Escamilla v. I.N.S.*, 647 F.2d 28 (9th Cir.1981); *U.S. ex rel. Ulrich v. Kellogg*, 30 F.2d 984 (D.C.Cir. 1929); *U.S. ex rel. Ulrich v. Stimson*, 279 U.S. 868 (1929); *Hermina Sague v. U.S.*, 416 F.Supp. 217, 219 (D.C.P.R.1976)).   Thus, while it is permissible to join Mr. Mora as a "symbolic plaintiff," it is important to recognize that the only issue which may be addressed by this Court is the possibility of impairment of the constitutional rights of Ms. Cardenas, a United States citizen,

through the exclusion of Mr. Mora.   *Adams*, 909 F.2d   at 647 (*citing Mandel*, 408

U.S. at 762).

　　Ms. Cardenas alleges that the government violated her constitutional rights to

both procedural and substantive due process in denying her husband's visa

application.   In *Bustamante,* the Ninth Circuit recognized that a citizen had a

protected liberty interest in marriage that entitled the citizen to limited review of the

denial of her spouse's visa application.   531 F.3d 1059, 1062 (9th Cir. 2008).

However, the Ninth Circuit has also held that there is no substantive due process

right to live with one's spouse in the United States.   *Morales-Izquierdo v. Dep't of*

*Homeland Sec.*, 600 F.3d 1076, 1091 (9th Cir. 2010).[7]   Subsequent district courts

within the Ninth Circuit have explained that although *Bustamante* recognized a

procedural due process right to constitutionally adequate procedures in the review of

a visa application, it did not recognize a substantive due process right to live with

---

7 As the *Morales-Izquierdo* court explained:

> To hold otherwise would create a barrier to removing an illegal alien like Morales in
> any case where that alien has married a United States citizen wife or fathered United
> States citizen children.   Stated another way, to indulge this theory [of a substantive
> due process right to live with one's spouse in the United States] is to hold that an
> illegal alien with United States citizen family members cannot be removed,
> regardless of the illegality of that alien's entry into the United States or conduct
> while within its borders.   Such a remarkable proposition, which would radically
> alter the status quo of our immigration law, simply cannot be gained by judicial fiat
> from an intermediate court.   If there is to be such a fundamental change in
> immigration law, it must originate with the Congress or with the United States
> Supreme Court, and not at our level of the judiciary.

*Id*. at 1091.

one's spouse in the United States.   *See, e.g., Torres v. Kerry*, 2013 WL 1386344 at

*2 (S.D. Cal. 2013) ("It is in this context—the assertion of a procedural due process

right—that the Ninth Circuit found in *Bustamante* that the limited inquiry authorized

by *Mandel* was appropriate"); *Boyal v. Napolitano*, 2011 WL 864618 at *4 (E.D.

Cal. 2011) (In *Bustamante*, "the plaintiffs alleged procedural due process violations.

They did not claim a substantive due process protection for their right to reside

together as spouses, but merely for constitutionally adequate procedures before the

government denies that right.").   The distinction is significant because, while

"substantive due process protects against government actions which deprive citizens

of certain rights, regardless of the fairness of procedures used, procedural due

process protects citizens not from the deprivation itself, but only the mistaken or

unjustified deprivation of the asserted right."   *Boyal*, at * 4 (*citing Zinermon v.

Burch*, 494 U.S. 113, 125 (1990)).

　　　In this case Ms. Cardenas has alleged that Defendants arrived at an erroneous

conclusion in denying Mr. Mora's visa application, and, in doing so, deprived her

and her husband of their fundamental right to live together.   However, as the Court

held in *Morales-Izquierdo*, there is no constitutional right to reside with one's

spouse in the United States.   600 F.3d at 1091.   Further, even if this Court were to

find Ms. Cardenas has a right to reside with her spouse in the United States, there is

no constitutional violation if a citizen's liberty interest is outweighed by competing

state interests.   *Boyal*, at *5.   As the Court held in *Boyal*, Ms. Cardenas' specific right to reside with her husband in the United States "is greatly outweighed by Congress's broad powers to regulate matters of immigration," and there can be "no violation of an individual's constitutional right to personal choice in matters of marriage where it conflicts with the State's sweeping powers to exclude aliens." *Id*. (*citing Oceanic Navigation Steam Co. v. Stranahan*, 214 U.S. 320, 339 (1909) ("over no conceivable subject is the legislative power of Congress more complete than it is over" the admission of aliens); *Mandel*, 408 U.S. at 766.   Ms. Cardenas has not suffered a substantive due process violation.

The Court's jurisdiction over this matter accordingly depends on whether Ms. Cardenas has alleged a procedural due process violation.   In addition to her substantive due process claim, Ms. Cardenas asserts that she had a right to constitutionally adequate procedures in the adjudication of her husband's visa application, and that the consular office failed to use such procedures when it denied Mr. Mora's visa application in bad faith and without sufficient evidence of gang membership.   "The Supreme Court has deemed 'straightforward' the notion that '[t]he Due Process Clause provides that certain substantive rights-life, liberty, and property-cannot be deprived except pursuant to constitutionally adequate procedures.'"   *Bustamante*, 531 F.3d at 1062 (*quoting Cleveland v. Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985)).   The first step in deciding a procedural due

process claim is "to identify the interest to which the due process attaches."

*Friedrich v. Sec'y of Health & Human Servs.*, 894 F.2d 829, 838 (6th Cir. 1990).

Freedom of personal choice "in matters of marriage and family life is, of course, one

of the liberties protected by the Due Process Clause."   *Bustamante,* at 1062

(citations omitted).   Assuming that Ms. Cardenas' allegation that constitutionally

inadequate procedures were utilized in the processing of Mr. Mora's visa application

is true, Ms. Cardenas, a U.S. citizen, has claimed a procedural due process violation.

The Court thus proceeds to consider whether the reason provided by the consular

officials for the denial of Mr. Mora's visa was "facially legitimate and bona fide."

*Id*.

As the Ninth Circuit recently noted in *Din v. Kerry*, 718 F.3d 856 (9th Cir.

2013), there is "little guidance on the application of the 'facially legitimate and bona

fide' standard."   *Id*. at 861(*citing Marczak v. Greene*, 971 F.2d 510, 517 (10th Cir.

1992) ("Because the 'facially legitimate and bona fide' standard is used relatively

infrequently, its meaning is elusive.").   In *Din*, the Ninth Circuit held:

> We agree with the Second Circuit that 'the identification of both a properly
> construed statute that provides a ground of exclusion and the consular
> officer's assurance that he or she 'knows or has reason to believe' that the visa
> applicant has done something fitting within the proscribed category
> constitutes a facially legitimate reason.'   This is consistent with *Bustamante*,
> in which we stated that the visa applicant 'was denied a visa on the grounds
> that the Consulate 'had reason to believe' that he was a controlled substance
> trafficker.

*Id.* (*quoting Am. Acad. of Religion v. Napolitano*, 573 F.3d 115, 126 (2d Cir. 2009) and *Bustamante*, 531 F.3d at 1062).

Here the consular officer cited to two provisions of the Immigration and Nationality Act, 8 U.S.C. § 1182(a)(3)(A)(ii) (an alien inadmissible because a consular officer has reason to believe he seeks to enter the United States to engage in unlawful activity) and 8 U.S.C. § 1182(a)(9)(B)(i)(II) (an alien inadmissible for 10 years due to unlawful presence in the United States of more than one year).   As neither Plaintiffs nor Defendants dispute that Mr. Mora unlawfully resided in the United States for more than one year, the "facially legitimate" inquiry here concerns only the consular officer's citation to 8 U.S.C. § 1182(a)(3)(A)(ii) in support of Mr. Mora's visa denial.[8]   The latter provision is broad in that it prohibits entry of any alien who a "consular officer or the Attorney General knows, or has reasonable ground to believe, seeks to enter the United States to engage solely, principally, or incidentally in … any other unlawful activity," without identifying   the specific unlawful activity at issue.   However, in addition to citing the statutory basis for Mr. Mora's inadmissibility, the consular officer also provided the reasons for the consul's belief that this statute applied to Mr. Mora.   Specifically, the consular

---

[8] Unlike a visa denial pursuant to 8 U.S.C. § 1182(a)(3)(A)(ii), denial under 8 U.S.C. § 1182(a)(9)(B)(i)(II) is subject to waiver at the sole discretion of the Attorney General. 8 U.S.C. § 1182(a)(9)(B)(v).   Under 8 U.S.C. § 1182(a)(9)(B)(i)(II), Mr. Mora is inadmissible until August, 2019 (ten years from the date he left the United States).   The Court presumes Defendants have not raised this section as an alternative ground to support Mr. Mora's inadmissibility because the provision is subject to waiver.

officer notified Plaintiffs, in various communications, that, at the time of Mr. Mora's June 2008 arrest, Mr. Mora was identified as a gang associate by law enforcement, and that the circumstances of Mr. Mora's arrest, as well as information gleaned during the consular interview, gave the consular officer sufficient "reason to believe" that Mr. Mora has ties to an organized street gang.   (Dkt. 26-1, ¶19.)   In addition, the Form I-213[9] contained in Mr. Mora's immigration file stated, "MORA was identified as a Sureno gang associate … by Nampa Police Department" and that "MORA was a passenger in a vehicle owned and driven by a [REDACTED] who had identifiers consistent to [sic] being a member of the Sureno gang."   (*Id*., ¶9.) Because the consul provided both a statutory basis for inadmissibility and factual allegations to support the application of the statute to Mr. Mora, the Court finds the consul provided a facially legitimate reason for the denial of Mr. Mora's visa.

Plaintiffs recently filed a notice of Supplemental Authority (Dkt. 30) to alert the Court to the Ninth Circuit's holding in *Din v. Kerry*, 718 F.3d 856 (9th Cir. 2013).   Plaintiffs suggest this case should survive dismissal under *Din* because the reason cited for Mr. Mora's visa denial was not facially legitimate.   In *Din*, the Ninth Circuit reversed the district court's dismissal of a visa denial under the doctrine of consular nonreviewability.    The *Din* court determined dismissal was

---

9 An INS Form I-213, Record of Deportable Alien is "'essentially a recorded recollection of [an INS agent's] conversation with the alien.'"   *Espinoza v. I.N.S.*, 45 F.3d 308, 309 (9th Cir. 1995) (*quoting Bustos-Torres v. I.N.S.*, 898 F.2d 1053, 1056 (5th Cir. 1990)).

not appropriate because the Government had not offered a facially legitimate reason

for its visa denial.   In so holding, the Court explained the visa at issue in *Din* was

denied on the basis of a broad provision of the INA that excludes aliens on a variety

of terrorism-related grounds, without any factual allegations as to how the statute

applied to the visa applicant.   *Din* does not alter this Court's conclusion that the

Consulate provided a facially legitimate reason for Mr. Mora's exclusion.

The statute at issue in *Din* contained numerous categories of proscribed

conduct, ranging from direct participation in violent terrorist activities to indirect

support of those who participate in terrorist activities.   *Id*. at 862.   In considering

the broad statutory ground for exclusion cited by the Government, the *Din* Court

noted:

> The first problem is compounded by the sweeping nature of the cited section
> of the INA.   Section 1182(a)(3)(B) exceeds 1,000 words.   It contains ten
> subsections identifying different categories of aliens who may be
> inadmissible for terrorism reasons.   The section defines 'terrorist activities'
> with reference to six different subsections, containing different kinds of
> conduct.   It defines 'engage in terrorist activity' in seven subsections, some
> of which are divided into further subsections ….   The citation to §
> 1182(a)(3)(B) contrasts with the much narrower ground of inadmissibility at
> issue in *Bustamante*.

*Id*.

In this case the statutory provision at issue is much more limited than that considered

in *Din*.   Specifically, §1182(a)(3)(A)(ii) renders any alien inadmissible on "security

and related grounds" where a consular officer or the Attorney General knows, or has

reasonable ground to believe, the alien "seeks to enter the United States to engage solely, principally, or incidentally in—any other unlawful activity."   There are no subsections, no proscription of varying degrees of activity, and no reference to other provisions of the statute.   Although, as mentioned, the statute is broad in that it generally proscribes "any other unlawful activity," without explanation of the specific unlawful activity prohibited, the consular officer here provided factual allegations that both unambiguously identified the unlawful activity at issue (gang association) and supported the application of § 1182(a)(3)(A)(ii) to Mr. Mora. Unlike in *Din*, here the Government has cited to a statutory ground "narrow enough to allow [the court] to determine that it has been 'properly construed.'"   *Din,* at 870 (*citing Am. Acad. of Religion*, 573 F.3d at 126).

In *Bustamante*, a visa application was denied under 8 U.S.C. § 1182(a)(2)(C): "Any alien who the consular officer or the Attorney General knows or has reason to believe is or has been an illicit trafficker in any controlled substance … is inadmissible."   531 F.3d at 1060.   The *Bustamante* Court determined the Consulate's statement that it had "reason to believe" that the alien at issue "was a controlled substance trafficker," and thus inadmissible under 8 U.S.C. § 1182(a)(2)(C), was "plainly a facially legitimate reason, as it is a statutory basis for inadmissibility."   *Id*. at 1062.   Under *Bustamante*, citation to a statutory basis for inadmissibility would appear to constitute a facially legitimate reason for denying a

visa.   However, *Din* clarified that the *reason* for exclusion in *Bustamante* was that "the Consulate 'had reason to believe' that [Jose Bustamante] was a controlled substance trafficker.'   The statute gave the reason legitimacy, but the statute standing alone was not the reason."   *Din*, at 862.   Because the Consulate had reason to believe Mr. Bustamante was trafficking illegal drugs and therefore inadmissible (even though the Consulate in *Bustamante* stated that the evidence supporting its conclusion that Mr. Bustamante was a drug trafficker was secret), the Consulate had given a facially legitimate reason for denial of Mr. Bustamante's visa application.   Here the Consulate similarly stated it had reason to believe Mr. Mora was involved in gang activity and therefore inadmissible under 8 U.S.C. §1182(a)(3)(A)(ii).   Under both *Bustamante* and *Din*, the Consulate provided a facially legitimate reason for exclusion.

Further, the *Din* Court noted that other circuits reviewing a citizen's challenge to a visa denial "have also relied on reasons for exclusion that contained some factual elements."   *Id*.   In *Din*, by contrast, the record was "completely void" of any allegations to support the Government's visa denial.   *Id*.   Not only did the Consulate fail to provide the *Din* plaintiffs with the specific statutory subsection or type of terrorist conduct rendering the alien inadmissible, it also failed to provide any reason at all to support application of the cited statute to the applicant.   *Id*. ("Din alleges that neither she nor [her husband] has any idea what [her husband]

could have done to be found inadmissible on terrorism grounds, and the Government

provides no reason other than its citation to § 1182(a)(3)(b).").   As previously

described, here the consul provided factual allegations to support its "reasonable

ground to believe" Mr. Mora seeks to enter the United States to engage in unlawful

gang activity.   8 U.S.C. §1182(a)(3)(A)(ii).    Although, as Plaintiffs contend, the

evidence of Mr. Mora's gang membership appears minimal, this Court is not

permitted to "look behind" exclusion decisions.   *Am. Acad. of Religion*, 573 F.3d at

137.   Instead, once the Court has satisfied itself "that the conduct alleged fits within

the statutory provisions relied upon as the reason for the visa denial," no evidentiary

inquiry is appropriate.   *Din*, at 863(internal quotation omitted); *see also Chiang v.

Skeirik*, 582 F.3d 238, 243 (1st Cir. 2009) (noting that if a facially legitimate and

bona fide reason is provided for exclusion, courts have no jurisdiction to review

evidentiary findings).

Because the consular officer provided a facially legitimate reason for Mr.

Mora's visa denial, the first part of the *Mandel* test is satisfied.   The Court must

accordingly turn to the second part of the test, or whether the citation to §

1182(a)(3)(A)(ii) was bona fide.   In *Bustamante*, the Ninth Circuit held that to

prevail under the bona fide prong of the *Mandel* test a plaintiff must "allege that the

consular official did not in good faith believe the information that he had."   531

F.3d at 1062-63.   In order to withstand dismissal, it "is not enough to allege that the

consular official's information was incorrect."   *Id*. at 1062.   Nor is it enough to allege that the alien is not and has never been a gang member (or, as in *Bustamante*, a drug trafficker).   *Id*.   Rather, the plaintiff must allege that the Consulate acted upon information it knew to be false.   *Id*. at 1063.

Plaintiffs rely upon the NPD Letter to support their claim that Mr. Mora's visa denial was made in bad faith.   Specifically, Plaintiffs contend the denial of Mr. Mora's "Immigrant Visa application cannot have been based on a good faith determination that Plaintiff Mora is a gang member because the very entity responsible for generating the alleged accusation subsequently indicated that it had no reason to believe Plaintiff Mora was involved in gang activity."   (Dkt. 26-1, ¶46.)   As Defendants note, however, Mr. Mora submitted the NPD Letter to the consular officer two months *after* Mr. Mora's visa application was first denied. (Dkt. 11-1, p. 10.)   The Consulate cannot be said to have acted "upon information it knew to be false," where it did not have knowledge of the NPD Letter until after Mr. Mora's visa application was denied.

Moreover, although the Consulate later had an opportunity to review the NPD Letter in the process of reconsidering Mr. Mora's visa application, the NPD Letter does not, as Plaintiffs contend, "specifically recant" the allegation that Mr. Mora was involved in gang activity.   (Dkt. 20, p. 5.)   Instead the NPD Letter states that the author could not locate "criminal gang documentation or contacts that would

indicate Mr. Mora Huerta was a gang member prior to or at the time of his arrest"
and that Mr. Mora's tattoos did not "specifically indicate gang involvement."   (Dkt.
24-1.)   However, the NPD Letter also states that, during the timeframe of Mr.
Mora's arrest, the Nampa Police Department was conducting a multi-agency gang
suppression operation, and that it is "quite possible that Mr. Mora Huerta was
contacted by assisting agencies during that timeframe in the City of Nampa, but that
he was not actually arrested by Nampa officers, therefore there would have been no
report placed into the Nampa Police Department records system."   (*Id*.)   Thus, the
NPD Letter suggests that the Nampa Police Department could have determined Mr.
Mora had ties to a gang, and may have come into contact with Mr. Mora due to his
relationship to gang activity, but that there would be no record of such contact two
years later when the NPD Letter was drafted because Mr. Mora was not arrested.
The information in Mr. Mora's I-213 supports this conclusion, as it states, "MORA
was identified as a Sureno gang associate … by Nampa Police Department," and that
"MORA was a passenger in a vehicle owned and driven by a [REDACTED] who
had identifiers consistent to [sic] being a member of the Sureno gang."   (Dkt. 26-1,
¶9.)   Contrary to Plaintiffs' claims, the NPD Letter does not suggest that the
consular officer acted upon information it knew to be false.

Further, in *Bustamante*, the court found significant that the information that Mr. Bustamante was a drug trafficker had been given to the consular officer by the head of the local DEA office.   The Court noted:

> We express no opinion on the accuracy of the information; what is significant is that the consular official relied on a fellow governmental official assigned to investigate illicit drug trafficking.   The Bustamantes do not allege that the transfer of information between the DEA and the Consulate never took place, or that the Consulate acted upon information it knew to be false.   On the record before us, there is no reason to believe that the consular officer acted on this information in anything other than good faith.

*Id*. at 1063.

Similarly, in this case, the consular officer acted upon information provided by the NPD.   Like the *Bustamante* Court, this Court cannot review the accuracy of such information, but notes that consul appears to have relied upon the NPD, a fellow government agency assigned to investigating criminal activity, in determining Mr. Mora had ties to street gangs.   Plaintiffs do not suggest that the transfer of information between the NPD and the consul never took place. Moreover, even if the information provided by the NPD to the Consulate was false, the Consulate had no reason to believe that such information was false.   Any bad faith associated with allegedly inaccurate information regarding Mr. Mora's gang activity would rest with the NPD in providing the information to the Consulate, and not with the Consulate in relying upon such information.   However, bad faith on behalf of the Consulate is required in order to state a claim.   Plaintiffs have not

alleged, nor, given the Court's finding with respect to the NPD Letter, do Plaintiffs appear capable of alleging that the consular officer was without reason to believe the information provided by the NPD was accurate.

In addition to the I-213 and the "circumstances surrounding Mr. Mora's arrest," the consular officer also stated it had sufficient reason to believe Mr. Mora had ties to an organized street gang due to information Mr. Mora provided during his interview.   (Dkt. 26-1, ¶19.)   Although the Consulate did not reveal the specific information gleaned during the consular interview to support its reason to believe Mr. Mora has ties to gangs, Plaintiffs have not alleged any facts to suggest that the Consulate did not believe, based on the interview, that Mr. Mora had gang ties.   As the Court stated in *Bustamante*, "it is not enough to allege that the consular official's information was incorrect ….   Under *Mandel's* limited inquiry, the allegation that the Consulate was mistaken about [Mr. Bustamante's] involvement with drug trafficking … fails to state a claim upon which relief could be granted."   531 F.3d at 1062-63.   Plaintiffs' claims similarly fail here because there are no allegations in the First Amended Complaint that plausibly suggest the consular officer acted upon information it knew to be false.

Regardless of whether the consul relied upon the information provided by the NPD, Plaintiffs contend that no reasonable person could believe Mr. Mora had gang associations because Mr. Mora's entire criminal history consists of failure to

purchase a valid driver's license, minor in possession and a speeding infraction. (Dkt. 20, p. 6.)    That Mr. Mora was never arrested for gang activity does not mean that he did not have ties to gangs, nor does it suggest the consul could not reasonably believe Mr. Mora had ties to gangs, particularly in light of the NPD's report that Mr. Mora was in the company of a Sureno gang associate when he was arrested. Plaintiffs also suggest the consul acted in bad faith because Immigration and Customs Enforcement ("ICE") offered Mr. Mora the opportunity to be released on bond, rather than requiring him to seek a bond from an immigration judge.    (*Id.*) Plaintiffs do not provide any authority to support the contention that ICE would not have released Mr. Mora on bond if it had reason to believe he was associated with gangs.   Moreover, Mr. Mora's release on bond by ICE does not alter or otherwise effect the consul's good faith reliance upon information provided by the NPD regarding Mr. Mora's gang involvement.   Plaintiffs also suggest, "[i]f there was any basis for the consular officer's conclusion that he or she had reasonable grounds to believe that Mr. Mora was a gang member … Plaintiff Mora would not have been granted voluntary departure."   (Dkt. 26-1, ¶11.)   This conclusion is inaccurate, as the Attorney General "may permit an alien voluntarily to depart the United States at the alien's own expense, in lieu of being subject to removal proceedings under the applicable provision or prior to the completion of such proceedings, if the alien is not deportable under the specified provisions as an aggravated felon or a terrorist

subject to deportation."   *3B Am. Jur. 2d Aliens and Citizens §1703* (*citing* 8 U.S.C.

§ 1229a; 8 U.S.C. § 1229c(a)(1)); *see also* 8 U.S.C. § 1101(a)(43) (defining the term

"aggravated felony.").   Because Mr. Mora was not convicted of an aggravated

felony or suspected of terrorist activity, he could be granted voluntary departure

despite involvement in gang activity.   In sum, despite the facts Plaintiffs raise to

establish bad faith, the Court cannot find the consul lacked a good faith belief in Mr.

Mora's ties to gang activity where the NPD transferred Mr. Mora to ICE because

Mr. Mora was with a Sureno gang member when he was arrested, and where the

consul also relied upon information "gleaned during Mr. Mora's immigration

interview" to determine he had ties to gang activity. [10]   (Dkt. 26-1, ¶19.)

Finally, the First Amended Complaint suggests the consular officer's decision

was "was based on unconstitutional racial stereotypes and unconstitutional racial

---

[10] Plaintiffs suggest the December 2012 denial of Mr. Mora's second immigrant visa application cannot have been made in good faith because "Plaintiff Mora was not permitted to place relevant evidence in the record for consideration at the interview," and because "Defendants had arranged the second interview for the purpose of receiving new information from Plaintiff Mora and subsequently refused to accept the relevant evidence proffered by Plaintiff Mora."   (Dkt. 26-1, ¶¶47-48.)   However, even if the consular officer did not physically accept the documents Mr. Mora presented during his second immigration interview, there is no evidence to suggest the Consulate acted upon information it knew to be false in denying Mr. Mora's visa for a second time.   As previously discussed, the consular officer provided factual allegations to support its finding that Mr. Mora had ties to organized street gangs.   In light of the facially legitimate reason for denial provided by the Consulate, and in the absence of plausible allegations of bad faith, any inquiry into the weight the Consulate assigned to the evidence provided by Mr. Mora is inappropriate.   *Din*, 718 F.3d at 863(recognizing no evidentiary inquiry is appropriate once a reviewing court has satisfied itself that the conduct alleged fits within the statutory provisions relied upon as the reason for the visa denial.) (*citing Am. Acad. of Religion*, 573 F.3d at 134).

discrimination."   (Dkt. 26-1, ¶39.)   Plaintiffs have not provided factual allegations sufficient to support their claim that the consular officer engaged in racial stereotyping or discrimination.   Although upon ruling on a Motion to Dismiss a court must generally accept the facts alleged in the complaint as true, "wholly vague and conclusory allegations are not sufficient to withstand a motion to dismiss." *Mann v. City of Tucson*, Dept. of Police, 782 F.2d 790, 793 (9th Cir.1986).   The Court appreciates that it is difficult for Plaintiffs to provide factual support that the consular officer acted in bad faith at this early stage of the proceedings and without discovery.   However, given the "extremely narrow" review permitted of consular decisions, this Court is without authority to go behind the facial reason for the Government's denial to determine whether it was based on accurate information. *Din*, at 861; *see also Bustamante,* at 1062 (as long as the reason for a visa denial is facially legitimate and bona fide the decision will not be disturbed).   Because the Court finds the consul provided a facially legitimate and bona fide reason for Mr. Mora's visa denial, further review is not permitted.   The First Amended Complaint accordingly fails to state a claim upon which relief may be granted.

   *3.  Rule 12(b)(1): Subject Matter Jurisdiction*

   In the absence of a constitutional claim, it is clear under nearly a century of jurisprudence that the Court lacks subject matter jurisdiction to review a consular

officer's visa denial.[11]   *See, e.g., Li Hing of Hong Kong v. Levin*, 800 F.2d 970, 970-71 (9th Cir. 1986) ("The doctrine of nonreviewability of a consul's decision to grant or deny a visa stems from the Supreme Court's confirming that the legislative power of Congress over the admission of aliens is virtually complete.");

*Ventura-Escamilla v. I.N.S.*, 647 F.2d 28, 30 (9th Cir. 1981) (holding that the court lacks jurisdiction when the "relief sought is a review of the Consul's decision denying [an] application for a visa."); *Saavedra Bruno v. Albright*, 197 F.3d 1153, 1159-60 (D.C. Cir. 1999) ("For the greater part of this century, our court has therefore refused to review visa decisions of consular officials."); *Romero v. Consulate of the U.S.*, *Baranquilla, Colombia*, 860 F.Supp. 319, 324 (E.D. Va. 1994) ("Although the doctrine of consular non-reviewability is not without its critics, it is well-grounded in established principles of national sovereignty and in sensible public policy [and] … has been well-established for over seventy years[.]").

However, the Supreme Court in *Mandel* authorized a limited right to judicial review where a visa denial implicates the constitutional rights of a U.S. citizen and is not made on the basis of a facially legitimate and bona fide reason.  *Mandel*, 408

---

11 Plaintiffs criticize the doctrine of consular nonreviewability, suggest the doctrine lacks "legal justification," and ask that the Court "revisit the validity of the doctrine." (Dkt. 20, pp. 9-12.)   Regardless of Plaintiffs' interpretation of consular nonreviewability, this Court has neither the inclination nor the authority to disregard a doctrine firmly established not only throughout the district and circuit courts of the United States, but also by the United States Supreme Court.  *See, e.g.*, *Mandel*, 408 U.S. at 767 (discussing significant history of doctrine of consular nonreviewability within U.S. jurisprudence).

U.S. at 770.   Although the *Mandel* court did not explicitly discuss the issue of subject matter jurisdiction, to "the extent there is a claim for review authorized under *Mandel*, it is plainly a claim that arises 'under the Constitution, laws, or treatises of the United States,' and is thus within the jurisdiction granted to the district courts under 28 U.S.C. § 1331."   *American Sociological Assoc. v. Chertoff*, 588 F.Supp.2d 166, 174 (D. Mass. 2008).   In *American Academy of Religion*, the Second Circuit explained that subject matter jurisdiction to adjudicate a visa denial claim is "clearly supplied" by 28 U.S.C. §1331 where a United States citizen alleges a visa denial in violation of constitutional rights.   573 F.3d at 123 (*citing Abourezk v. Reagan*, 785 F.2d 1043, 1050 (D.C. Cir. 1986) ("The district court had subject matter competence in this case [involving visa denials] under … its general federal question jurisdiction[.]") (citation omitted); *Burrafato v. U.S. Dept. of State*, 523 F.2d 554, 556 (2d Cir. 1975) (stating *Mandel* considered "an alleged violation of First Amendment rights of American citizens over which the federal courts clearly had jurisdiction.").   Given Ms. Cardenas' procedural due process allegation, the Court has subject matter jurisdiction under 28 U.S.C. § 1331.   However, because the Court finds the government gave a "facially legitimate and bona fide reason" for the denial of Mr. Mora's visa petition, further review of the denial is neither necessary nor appropriate.   *American Sociological Assoc.*, 588 F.Supp.2d at 172 (*citing Mandel*, 408 U.S. at 770).

Plaintiffs argue that a federal question is also presented because the relief sought is available under the APA, 5 U.S.C. § 701(a)(2).   This argument is inaccurate, as the APA includes the reservation that "[n]othing herein … affects other limitations on judicial review of the power or duty of the court to dismiss any action or deny relief on any other appropriate legal or equitable ground."   5 U.S.C. § 702(1).   The agency action challenged here—Mr. Mora's visa denial—is generally precluded from judicial review by the longstanding doctrine of consular nonreviewability.   *American Sociological Assoc.*, 588 F.Supp. 2d at 174. Assuming Ms. Cardenas qualifies as a person "suffering legal wrong because of agency action," review of the denial of Mr. Mora's visa application is foreclosed except to the extent authorized by the *Mandel* exception to the doctrine of consular nonreviewability.[12]   5 U.S.C. § 702.

Given the Court's holding that subject matter jurisdiction is provided under 28 U.S.C. §1331, it need not address whether the additional statutes cited by Plaintiffs (8 U.S.C. §1101 *et. seq.* and 28 U.S.C. § 1361) provide alternate grounds

---

12  Moreover, the APA does not, as Plaintiffs contend, provide a federal court with an independent basis for jurisdiction.   (Dkt. 20, p. 8.)   Instead, the APA prescribes standards for judicial review of an agency action, once jurisdiction is already established.   *Tuscon Airport Auth. v. General Dynamics Corp.*, 136 F.3d 641, 645 (9th Cir. 1998) ("It is beyond question that … that the APA does not provide an independent basis for subject matter jurisdiction in the district courts."); *see also Romero*, 860 F.Supp. at 324 (E.D. Va., 1994) ("Nor can plaintiffs rescue their claims from the doctrine of consular nonreviewability by citing the APA.   The APA provides no implied grant of subject matter jurisdiction to review consular decisions.") (*citing Califano v. Sanders*, 430 U.S. 99, 105 (1977)).

for jurisdiction.   Nor, given the dismissal of this matter under Federal Rule 12(b)(6), need the Court consider Defendants' claims that this case should be dismissed for failure to name the proper defendants.[13]

### ORDER

1.   Plaintiffs' Motion to Amend their Complaint (Dkt. 26) is **GRANTED**. For the reasons stated herein, the Court has considered Defendants' Motion to Dismiss (Dkt. 11) as a Motion to Dismiss Plaintiffs' First Amended Complaint.

2.   Pursuant to Federal Rule 12(b)(6) Defendants' Motion to Dismiss (Dkt. 11) is **GRANTED** and Plaintiffs' claims are **DISMISSED with prejudice**.

3.   Plaintiffs' Motion for Order Instructing Defendants to Immediately Answer Complaint (Dkt. 12) is **MOOT**.

---

13 Plaintiffs have had the opportunity to amend their complaint to include facts to indicate the consul's visa denial was not facially legitimate and bona fide.   The facts alleged in the First Amended Complaint do not plausibly suggest the consul acted on either the basis of a facially illegitimate reason or that the consul acted in bad faith.   Because the primary basis for Plaintiffs' bad faith allegation is the NPD Letter, and because the Court has determined the NPD Letter does not suggest the consul acted in bad faith, the Court cannot imagine facts sufficient to support a second attempt to amend the complaint.   This case is accordingly dismissed with prejudice.

SO ORDERED.

DATED: August 19, 2013

Edward J. Lodge
United States District Judge